1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   SHIOW-HUEY CHANG,                      Case No.  5:15-cv-02502-RMW

               Plaintiff,

13
                                           **ORDER REGARDING MOTIONS FOR**
14        v.                                **JUDGMENT AS A MATTER OF LAW**
                                            **AND ATTORNEYS' FEES**
15   COUNTY OF SANTA CLARA, et al.,
                                           Re: Dkt. Nos. 133, 140
16             Defendants.

17        In this case involving excessive force by police, before the court are a renewed motion for

18   judgment as a matter of law (JMOL) filed by defendants Deputy Rachel Strickland ("Strickland")

19   and the County of Santa Clara ("County"), Dkt. No. 133, and a motion for attorneys' fees[1] filed by

20   plaintiff Shiow-Huey Chang, Dkt. No. 140. Having considered the motions, the relevant law, and

21   the record in this case, the motion for JMOL is GRANTED as to defendant County and DENIED

22   as to defendant Strickland, and the motion for attorneys' fees is GRANTED, but in an amount

23   significantly less than the amount plaintiff requested.

24

25

26   [1] Plaintiff's motion for attorneys' fees and out-of-pocket expenses does not cover the litigation
     costs that plaintiff requested separately on August 19, 2016. Dkt. No. 132. The Clerk of the Court
27   will process plaintiff's bill of costs and defendants' objections to that bill in accordance with Civil
     Local Rule 54-4.
28
                                                1

United States District Court
Northern District of California

## I.   BACKGROUND

This action under 42 U.S.C. § 1983 arises from a traffic stop the early evening of June 11, 2014. Plaintiff Chang, a female, Chinese-American, was driving her car alone on Foothill Expressway when defendant Forest, a Santa Clara County Sheriff's Deputy who was driving a police car at the time, observed her pull to a stop on the right-hand side of the road. *See* TX 1014 at 0:38-0:58 (video).[2] Plaintiff testified that she pulled to a stop because she saw the police car coming up behind her at a high rate of speed and assumed that the police were "going somewhere in a hurry." Trial Tr. vol. 3, 32:5-33:3. Forest initially pulled alongside plaintiff and stopped in the left lane. After a brief pause, plaintiff then slowly drove forward in the right-hand lane. TX 1014 at 0:51-1:05.

Forest followed and activated his lights to commence a traffic stop. Plaintiff pulled over to the side of the road. Forest got out of the police car, approached plaintiff's driver's side window, and apparently asked her for identification. No audio is available for that portion of the stop. A few minutes later, Strickland, a female Sheriff's deputy, arrived on the scene and walked to the passenger side window of plaintiff's car. TX 1014 at 4:10-4:20. Both deputies walked back away from Chang's car and retrieved information on Chang. They found that her driver's license was valid and that she had no active warrants. Trial Tr. vol. 2 49:14-20.

Several minutes later, the deputies walked back to plaintiff's car, with Forest on the driver's side and Strickland on the passenger side. Strickland activated the microphone on her uniform. TX 1014 at 11:16. Forest told Chang that he was issuing a citation to her for impeding traffic, and Forest asked that she sign the bottom of the ticket. TX 1013 at 2:24-25. Chang refused to sign the ticket and became upset. Trial Tr. vol. 2, 125:6-15; *see generally* TX 1014 at 11:16-13:12. Plaintiff asked the deputies how much she would have to pay for the ticket, TX 1013 at 2:30; said that the deputies had scared her, *id.* at 2:35-3:42; and asked why she needed to spend

---

[2] The majority of the incident is captured on video from cameras inside the defendant deputies' police cars, though not all of the audio is captured because the deputies did not activate the microphones on their uniforms until several minutes into the traffic stop. *See* TX 1014. The portion of the stop that was captured on audio was transcribed and presented as a trial exhibit. TX 1013 (Dkt. No. 134-3).

United States District Court
Northern District of California

her time explaining the situation to a judge, *id.* at 3:44-49. Plaintiff also accused the deputies of racial profiling. *Id.* at 3:52. Plaintiff began gesturing with her hand outside of her driver's side window and hit Forest's clipboard and hand. TX 1014 at 12:21-13:12; Trial Tr. vol. 3, 68:13-15, 68:18-23. Strickland warned plaintiff twice to be careful with her hand, and then, in a final warning, said that if plaintiff hit Forest one more time she would be going to jail. TX 1013 at 3:58, 4:62, 4:67-68. Around the same time, plaintiff demanded to talk to Forest's supervisor. *Id.* at 4:71. Forest responded, gesturing to Strickland, "How do you know she's not here? How do you know that's not my supervisor?" *Id.* at 4:73-74; Trial Tr. vol. 2, 61:4-7; TX 1014 at 13:00-13:02. Strickland was not Forest's supervisor. Plaintiff responded, extremely agitated, "She's not. I want a supervisor. Right now." TX 1013 at 4:75. Two more times, Forest asked plaintiff if she was going to sign the citation, and two more times, plaintiff yelled that she wanted to see Forest's supervisor and hit his clipboard or his hand. *Id.* at 4:76-80; TX 1014 at 13:02-13:13.

At this point, Forest grabbed plaintiff's arm, opened the car door, and pulled plaintiff out of her car without telling Strickland that he intended to do so or warning plaintiff. TX 1014 at 13:13-13:17; Trial Tr. vol. 3, 68:24-69:13. Strickland told plaintiff she was going to jail. TX 1013 at 4:80. Strickland came around to the driver's side of the vehicle to assist, although by the time she got there Chang was already being pulled from her vehicle. TX 1014 at 13:13-13:17. Plaintiff is approximately five feet, two inches tall and weighs just over 100 pounds. Trial Tr. vol. 3, 27:19-28:2. Forest is approximately six feet, three inches tall and weighs around 225 pounds. Trial Tr. vol. 2, 54:19-25. Video of the incident shows that Strickland is also larger than plaintiff. *See* TX 1014 at 13:12-13:45. Plaintiff was pushed up against her car by Forest and by Strickland who was by then assisting Forest. Trial Tr. vol. 2, 13:19-13:40. The deputies handcuffed plaintiff and took her to a patrol car. At one point, Chang said to the deputies, "You are hurting me," at which point Forest responded, "Yeah, I know; you are gonna go to jail too now." TX 1013 at 5:94-95. During the arrest, plaintiff's face was pressed against her car, and she injured her cheek. Trial Tr. vol. 3, 25:18-24. She also suffered minor bruises to her wrists. *Id.* at 80:18-81:2. Plaintiff's glasses were also broken, though the parties dispute whether this occurred because her face was pressed

3

against her car or because plaintiff stepped on her glasses, which had fallen off around the time she was placed in the patrol car. *See* Trial Tr. vol. 2, 100:22-25, 137:15-25.

Plaintiff was arrested and charged criminally with battery on a police officer, resisting arrest, and impeding traffic. Trial Tr. vol. 2, 95:23-96:7. These charges were subsequently dismissed. *Id.* at 98:25-96:3. Later on the evening of her arrest, plaintiff was released from jail.

Plaintiff went to the hospital for treatment of her minor injuries and, while at the hospital, plaintiff made a complaint to the Internal Affairs division of the Sheriff's Department. She spoke with a Sergeant Roberts while at the hospital, and she later spoke with a female deputy in Internal Affairs. Trial Tr. vol. 3, 48:21-49:1. Chang later received a letter from the Sheriff's department regarding the outcome of the investigation. TX 30 (Dkt. No. 134-6). The letter stated, in relevant part:

> Dear Ms. Chang:
> The complaint you lodged with this office has been investigated. It has been determined that the proper findings in this matter were: **Exonerated.**
> - **Exonerated: The investigation indicates the act occurred but the act was justified, lawful and proper.**
> The Sheriff's Office Administration reviewed this and concurs in with these findings.

*Id.* The letter was signed by Sergeant Paula McAllister of Internal Affairs, with Sgt. McAllister's name appearing below the printed name of Sheriff Laurie Smith. *Id.*

Plaintiff commenced this lawsuit on June 5, 2015. Dkt. No. 1. She asserted a claim under 42 U.S.C. § 1983 against the defendant deputies for excessive use of force during her arrest. She also sued the County of Santa Clara based on her assertion that "defendants were acting in accordance with a custom, policy, and practice of the County and the SCCSO in violating plaintiff's constitutional rights." *Id.* ¶ 43. Following discovery, the case proceeded to trial on July 18, 2016. The jury heard two days of testimony, and the only witnesses to testify were defendant Forest and plaintiff Chang. The jury heard evidence that plaintiff paid approximately $37,000 to the same law firm pursuing her civil case to defend against the criminal charges that were later dismissed, in addition to several hundred dollars in related expenses. Trial Tr. vol. 3, 51:8-52:24.

1   Following the close of plaintiff's case in chief, defendants County, Forest, and Strickland moved

2   for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Dkt. No. 108.

3   Plaintiff filed an opposition. Dkt. No. 113. The court took the motion under submission. The jury

4   reached a verdict in favor of plaintiff against all three defendants and awarded her $40,000 on July

5   27, 2016. Dkt. No. 122. The court entered judgment on July 28, 2016, Dkt. No. 125.

6        Defendants Strickland and County (but not defendant Forest) filed the instant renewed

7   motion for judgment as a matter of law pursuant to Rule 50(b) on August 25, 2016. Dkt. No. 133.

8   Plaintiff filed an opposition on September 8, 2016, Dkt. No. 142, and defendants Strickland and

9   County filed a reply on September 15, 2016, Dkt. No. 143. Plaintiff filed the instant motion for

10  attorneys' fees on September 6, 2016. Dkt. No. 140. Defendants Forest, Strickland, and County

11  filed an opposition on September 29, 2016, Dkt. No. 150, and plaintiff filed a reply on October 6,

12  2016, Dkt. No. 154. Plaintiff filed a notice of errata and a corrected exhibit in support of her fee

13  motion on October 11, 2016. Dkt. No. 156. The parties also submitted supplemental briefs in

14  response to the court's questions. Dkt. Nos. 160, 161.

15  **II.     ANALYSIS**

16       **A.     Judgment as a Matter of Law**

17       In relevant part, Federal Rule of Civil Procedure 50(b) provides:

18              If the court does not grant a motion for judgment as a matter of law
                made under Rule 50(a), the court is considered to have submitted the
19              action to the jury subject to the court's later deciding the legal
                questions raised by the motion. No later than 28 days after the entry
20              of judgment . . . the movant may file a renewed motion for judgment
                as a matter of law . . . .
21

22  A court reviews "a jury's verdict for substantial evidence in ruling on a properly made motion

23  under Rule 50(b)." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "The

24  test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is

25  contrary to the jury's verdict." *Barnard v. Theobald*, 721 F.3d 1069, 1075 (9th Cir. 2013) (quoting

26  *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2005)). JMOL should be granted only where

27  "there is no legally sufficient basis for a reasonable jury to find for that party on that issue."

28

United States District Court
Northern District of California

*Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1109–10 (9th Cir. 2013) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 917 (9th Cir. 2003)). "[T]he court 'may not substitute its view of evidence for that of the jury.'" *Id.* at 1110 (quoting *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001)). The court addresses the arguments presented by defendants Strickland and County in turn.

### 1.    Deputy Strickland

Strickland argues that because she played only a supporting role in plaintiff's arrest, no reasonable juror could find that Strickland used excessive force. A claim against law enforcement officers for excessive force is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotation marks and citation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

In this case, the jury had sufficient evidence to find that the force Strickland used in removing plaintiff from her car and placing her under arrest was excessive. The dash cam video shows that Strickland grabbed plaintiff's arm, twisted plaintiff's arm, pushed plaintiff against her car, and exerted pressure on plaintiff's wrist while Strickland was applying handcuffs to plaintiff. *See* TX 1014 at 13:18-15:10. Moreover, as plaintiff points out, deputy Forest did not move for JMOL, and so the finding of excessive force against him stands. To the extent that Strickland played an integral role in Forest's use of force, as plaintiff has argued, *see* Dkt. No. 142 at 8, Strickland was also responsible for the deputies' joint application of force. Strickland does not dispute in her reply brief that she acted as an integral participant in Forest's conduct. Accordingly, even if Strickland's conduct, standing alone, was insufficient to constitute excessive force, she is still responsible for applying excessive force in concert with Forest.

United States District Court
Northern District of California

Strickland also argues that even if she did use excessive force, qualified immunity shields her from liability. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In assessing a claim of qualified immunity, a court must examine: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *See id.* at 232.

The jury found that Strickland violated plaintiff's constitutional rights by using excessive force, and Strickland has not presented a sufficient basis to overturn that finding. Moreover, Strickland has cited no authority that would cast doubt on whether plaintiff had the right to be free from the use of excessive force under the circumstances of this case. Strickland argues that plaintiff's position "amounts to a claim that Strickland was legally on notice and she had to make a split-second decision to free Chang from custody the instant Forest removed her from the car." Dkt. No. 133 at 7. The court disagrees with this characterization. Whether Strickland had an obligation to free plaintiff is not at issue in this case, but Strickland did have an obligation not to participate in applying the excessive force that caused injuries—albeit minor ones—to plaintiff. Accordingly, the court finds that qualified immunity does not apply.

For the reasons stated above, Strickland's motion for judgment as a matter of law is denied.

### 2.    Defendant County and Municipal Liability

Under Supreme Court case law, a municipality such as a county can be held liable for a constitutional violation under Section 1983, but only if the violation results from the municipality's official policies or customs. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir.1999). However, a single constitutional deprivation can be an official policy under certain circumstances. *See id.*

5:15-cv-02502-RMW
ORDER REGARDING MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND ATTORNEYS' FEES
RS

United States District Court
Northern District of California

More specifically, an isolated constitutional violation is an official policy for which a municipality can be held liable when: (1) the person causing the violation has "final policymaking authority," *see id.* at 1235-36; (2) the person causing the violation is a subordinate but his or her action is "ratified" by one with final policymaking authority, *see id.* at 1238-39; or (3) the person causing the violation is a subordinate, but one with final policymaking authority is "deliberately indifferent" to the subordinate's action, *see id.* at 1240-41.

Plaintiff argues that County is liable on a theory of ratification, because according to plaintiff, Sheriff Laurie Smith failed to conduct a proper internal affairs investigation of the deputies' conduct. Plaintiff notes that no one at the Sheriff's Department even interviewed Forest during the investigation, after which the defendant deputies were exonerated.

"[R]atification requires, among other things, knowledge of the alleged constitutional violation." *Christie*, 176 F.3d at 1239. Defendants argue in their motion and in their reply that the contents of plaintiff's complaint to Internal Affairs are not apparent from the trial record. *See* Trial Tr. vol. 3 at 48:18-49:22 (Chang testifying that she complained to Internal Affairs but not describing the nature of her complaint). Thus, defendants argue, it is not clear that Sheriff Smith actually knew that plaintiff expected her to investigate a claim of excessive force, as opposed to claims of an improper traffic stop or citation, alleged racial profiling, or Forest's apparent dishonesty in saying who his supervisor was. Defendants point out that plaintiff complained to Sgt. Powers, the defendant deputies' supervisor, about the traffic stop, the alleged racial profiling, Forest's suggestion that Strickland might be his supervisor, and the plaintiff's belief that the police had broken her glasses, but plaintiff did not specifically tell Powers that Forest or Strickland had hurt her. TX 1013 at 17:320-28, 19:365-67, 20:379-80, 24:467-71. The County's argument is persuasive. Plaintiff cites nothing in the record to explain the subject matter of her complaint to Internal Affairs. Plaintiff's attorneys could have asked Chang and potentially Forest or another officer to testify about the subject matter of the complaint to Internal Affairs, but they did not do so. Thus, there is no direct evidence that Sheriff Smith actually knew that plaintiff had complained of excessive force. Nevertheless, plaintiff argues, the jury could have inferred from the fact that

8

1 plaintiff complained to Internal Affairs from the hospital that she was complaining about

2 excessive force. But because plaintiff did not offer any details regarding her conversation with

3 Internal Affairs, the jury did not find out the extent to which Internal Affairs was aware of

4 plaintiff's injuries, if at all.

5       Even if Sheriff Smith did eventually find out about an excessive force complaint,

6 defendants argue that the County cannot be liable for the failure to discipline the deputies because

7 Sheriff Smith was unaware of the alleged constitutional violation until it was complete.

8 Defendants cite three cases in support of their argument. In *Christie*, the Ninth Circuit held that

9 the County of Hawaii could not be liable for a deputy prosecutor's selective prosecution of

10 plaintiff Christie because the District Attorney—the deputy's supervisor—was not aware of the

11 illegal prosecution until after the charges against Christie were dismissed. 176 F.3d at 1239. In

12 contrast, material issues of fact precluded summary judgment in favor of the county for the deputy

13 prosecutor's selective prosecution of another individual, Anderson, because the supervising

14 District Attorney actually participated in that prosecution. *See id.* The Ninth Circuit explained:

15 "[R]atification requires, among other things, knowledge of the alleged constitutional violation."

16 *Id.* Defendant also cites two district court cases that have applied *Christie* to hold that

17 municipalities cannot be liable for police misconduct based solely on an internal affairs

18 investigation that clears the officers of wrongdoing. *See Chavez v. City of Hayward*, No.

19 14-cv-00470-DMR, 2015 WL 3833536, at *8 (N.D. Cal June 19, 2015); *Cole v. Doe 1 through 2

20 Officers of City of Emeryville Police Department*, 387 F. Supp. 2d 1084, 1099 (N.D. Cal. 2005).

21       Plaintiff attempts to distinguish *Chavez* and *Cole* by arguing that in the instant case, the

22 County's internal affairs investigation was meaningless. Plaintiff compares this case to *Larez v.

23 City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991), a case in which the Ninth Circuit found no

24 plain error in holding the police chief and city of Los Angeles liable because there was evidence of

25 widespread failure to discipline officers for excessive use of force. A two-year study of LAPD

26 complaints showed that it was "almost impossible for a police officer to suffer discipline as a

27 result of a complaint lodged by a citizen." Plaintiff's attempt to compare the instant case to *Larez*

28

United States District Court
Northern District of California

1   is unpersuasive because here, the jury heard no evidence that there was even more than one failure

2   to discipline an officer in Santa Clara County.

3          Plaintiff cites three cases for the proposition that post-incident evidence, such as a failure

4   to investigate, can support a finding that an illegal police practice existed at the time of the

5   incident. Dkt. No. 142 at 14:4-11. However, the cases plaintiff cites are distinguishable from the

6   instant case because in each case there was evidence that the policymaker was actually or

7   constructively aware of a history of police misconduct. *See Richards v. Janis*, No. CV-06-3064-

8   EFS, 2007 U.S. Dist. LEXIS 77929, at *20 (E.D. Wash. Oct. 17, 2007) (noting "Officer Cavin's

9   taser usage history, [and] the Department's apparent acquiescence"); *Bordanaro v. McLeod*, 871

10  F.2d 1151, 1158 (1st Cir. 1989) (summarizing that "a well-settled, unconstitutional practice of

11  breaking down doors without warrants existed" and that "[t]he Chief of Police had constructive

12  knowledge of this custom yet did nothing"); *Spell v. McDaniel*, 824 F.2d 1380, 1393 (4th Cir.

13  1987) (noting that witnesses "testified to a number of observed or directly experienced acts of

14  brutality by city police" after which "in each instance they filed complaints with the police

15  department which resulted in no corrective or punitive action"). The instant case, by contrast,

16  involved only a single incident of excessive force.

17         Plaintiff attempts to compare this case to *Rosales v. City of Chico*, CIV. NO. 2:14–02152

18  WBS CMK, 2015 WL 6167740, at *6–8 (E.D. Cal. Oct. 20, 2015), a case in which a district court

19  denied summary judgment to a city on a *Monell* claim. In *Rosales*, a police chief investigated an

20  excessive force claim and issued a report to the officer stating: "The finding regarding the

21  allegation that you used excessive force during the incident has been determined to be

22  EXHONERATED [sic]. You were in compliance with Department policy." *Id.* at *7. Chang

23  argues that in the instant case, the Santa Clara County Sheriff's Department "letter stated the

24  deputies' conduct was 'proper,' *i.e.*, **conformed with County policy**." Dkt. No. 142 at 1

25  (emphasis in plaintiff's original brief). Plaintiff misstates the record. In the instant case, unlike in

26  *Rosales*, Sgt. McAllister's letter to Chang said nothing about departmental policy; it merely said:

27  "the proper findings in this matter were: **Exonerated**. . . . The investigation indicates the act

28                                                    10

1    occurred but the act was justified, lawful and proper." TX 30. The *Rosales* court itself

2    distinguished a claim from which a policy could be inferred from a claim involving knowledge of

3    wrongdoing and ratification. "In this case," the *Rosales* court ruled, "it is not a mere ratification,

4    but rather the Chief of Police's pronouncement that Officer Bailey's alleged use of force was 'in

5    compliance with Department policy' that gives rise to a *Monell* claim." 2015 WL 6167740 at *7.

6    Accordingly, plaintiff's reliance on *Rosales* is misplaced.[3]

7         Plaintiff also argues that Sheriff Smith knew of the alleged unconstitutional conduct before

8    it was complete because Chang filed her internal affairs complaint before Forest had submitted the

9    Incident Report that led to Chang's prosecution. This argument is also unpersuasive, however,

10   because the unconstitutional conduct at issue in this case was the alleged excessive use of force

11   that had ended long before plaintiff complained to Internal Affairs. By contrast, in *Fuller v. City of*

12   *Oakland*, 47 F.3d 1522, 1535 (9th Cir. 1995), which plaintiff cites, part of the allegedly illegal

13   conduct at issue was the internal affairs investigation itself, which Fuller, a former police officer,

14   claimed had been conducted in a sexually-biased manner. In *Lisker v. City of L.A.*, No.

15   CV09-09374 AHM (AJWx), 2013 U.S. Dist. LEXIS 48184, at *90-92 (C.D. Cal. Feb. 4, 2013), on

16   which Chang also relies, the plaintiff remained in prison as a result of the police chief's alleged,

17   repeated failure to investigate claims that officers had fabricated evidence against him. In *Lisker*,

18   unlike the instant case, the constitutional harm was ongoing. In this case, there was no evidence of

19   excessive force after Chang complained to Internal Affairs. In any event, plaintiff did not present

20   evidence that Sheriff Smith, as opposed to the district attorney, was responsible for Chang's

21   prosecution—the harm that plaintiff claims flowed from Forest's Incident Report.

22         In sum, plaintiff failed to present evidence of an unconstitutional custom or practice that

23   would be necessary to support a *Monell* claim. Accordingly, the motion for judgment as a matter

24   of law as to Chang's *Monell* claims against the County is granted.

25

26   [3] For the same reason, plaintiff's reliance on *Ashley v. Sutton*, 492 F.Supp.2d 1230, 1245 (D. Or.

27   2007), an excessive force case in which a police chief explicitly found that there were "no City of
     Milton–Freewater Police Department policies or procedures that were not properly followed" is

28   also misplaced.

5:15-cv-02502-RMW
ORDER REGARDING MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND ATTORNEYS' FEES
RS

### B.      Attorneys' Fees

Plaintiff seeks attorneys' fees and out-of-pocket expenses from defendants under 42 U.S.C. § 1988(b). Defendants do not dispute that for purposes of plaintiff's fee motion, plaintiff was the prevailing party in litigation. Thus, the only issue is the reasonableness of the fee request under the circumstances of this case. Plaintiff requests $970,063.47 in attorneys' fees and out-of-pocket expenses as indicated in the table below:

| Category | Requested Amount |
|---|---|
| Pre-Trial and Trial (1/22/2015 - 7/27/2016) | $826,259.50 |
| Fee Motion (7/28/2016 - 8/30/2016) | $39,333.75 |
| Fee Motion (8/31/2016 - 10/5/2016)[4] | $55,371.00 |
| Post-Trial Work (7/28/2016 - 8/30/2016) | $2,790.00 |
| Post-Trial Work (8/31/2016 - 10/5/2016) | $18,733.50 |
| Out-of-Pocket Expenses | $27,575.72 |
| **Total** | **$970,063.47** |

*See* Dkt. No. 141-1, Dkt. No. 156-1.

### 1.      Legal Standard

"[P]laintiffs may receive fees under § 1988 even if they are not victorious on every claim." *Fox v. Vice*, 563 U.S. 826, 834 (2011). In *Fox*, the Supreme Court explains that:

> A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if "the plaintiff failed to prevail on every contention." The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief: Such work "cannot be deemed to have been expended in pursuit of the ultimate result achieved." But the presence of these unsuccessful claims does not immunize a defendant against paying for the attorney's fees that the plaintiff reasonably incurred in remedying a breach of his civil rights.

*Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). In determining whether or not claims are "related" for the purposes of determining attorneys' fees, the court must consider whether the plaintiffs' claims "are based on different facts and legal theories." *Hensley*, 461 U.S.

---

[4] The amount reflected here is $90 less than the amount requested in plaintiff's papers. Plaintiff's amended time entry spreadsheet contained an arithmetical error in the amount requested for a September 21, 2016 time entry. Dkt. No. 156-1 at 1. The entry requests $315.00 for 0.5 hours of work at a rate of $450.00 per hour. The court has assumed that plaintiff intended to request $225.00 for that half-hour of work.

1   at 434. If so, "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit

2   of the ultimate result achieved.'" *Id.* (quotation omitted). In the instant case, because plaintiff's

3   claims against Forest, Strickland, and the County arose from a common core of facts—namely, the

4   deputies' excessive use of force during a traffic stop—the court treats all three claims as related

5   for purposes of fee calculation. *See, e.g.*, *McCown v. City of Fontana*, 565 F. 3d 1097, 1103 (9th

6   Cir. 2009) (treating plaintiff's claims as related for fee calculation because "[e]ach of McCown's

7   claims, though brought on the basis of different legal theories against different defendants, arose

8   from a common core of facts, namely, his arrest on June 2, 2004.").

9         Courts in the Ninth Circuit calculate attorneys' fees using the lodestar method, whereby a

10   court multiplies "the number of hours the prevailing party reasonably expended on the litigation

11   by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008)

12   (citation omitted). A party seeking attorneys' fees bears the burden of demonstrating that the rates

13   requested are "in line with the prevailing market rate of the relevant community." *Carson v.*

14   *Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (citation omitted). Generally, "the

15   relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979

16   (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "[a]ffidavits of the

17   plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate

18   determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *U.*

19   *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

20         "The [lodestar calculation] does not end the inquiry," however. *Hensley*, 461 U.S. at 434.

21   The "results obtained" is an "important factor" that allows the court "to adjust the fee upward or

22   downward." *Id.* The court may also consider the additional factors from *Johnson v. Georgia*

23   *Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v.*

24   *Bergeron*, 489 U.S. 87 (1989), in adjusting the lodestar amount, although *Hensley* explains that

25   many of these factors are already subsumed by the lodestar calculation.[5] *Hensley*, 461 U.S. at 434.

26

27   _____
     [5] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the

28   questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of

United States District Court
Northern District of California

The most relevant of these additional factors in the instant case are the time and labor required, the novelty and difficulty of the questions, the skill requisite to perform the legal service properly, and the amount involved and the results obtained.

### 2.  Reasonable Hourly Billing Rates

Plaintiff requests the following hourly rates for the team of attorneys from the McManis Faulkner law firm that represented her in this matter:

| Name and Role | Initials | Years of Experience | Requested Rate |
|---|---|---|---|
| James McManis, Senior Partner | JM | 49 | $1,140.00 |
| Tyler Atkinson, Partner | TA | 8 | $450.00 |
| Hilary Weddell, Associate | HW | 3 | $375.00 |
| Jennifer Murakami, Associate | JHM | 6 | $425.00 |
| Melinda Bailey, Paralegal | MLB | 20 | $325.00 |
| Manuel Carvajal, Paralegal and Trial Technology Specialist | MBC | 10 | $275.00 |

The court finds that the rates plaintiff has requested for each of these timekeepers is excessive. In support of her motion, plaintiff submits a declaration from Mr. Atkinson that cites attorney fee awards from several Bay Area cases between 2010 and 2016. Dkt. No. 140-3. According to plaintiff's research:

- Attorneys such as Mr. McManis with between 30 and 54 years of experience have received between $550 and $975 per hour.
- Attorneys such as Mr. Atkinson with between 7 and 9 years of experience have received between $300 and $735 per hour.
- Attorneys such as Ms. Murakami with 6 years of experience have received between $358 and $620 per hour.
- Attorneys such as Ms. Weddell with between 2 and 3 years of experience have received between $200 and $430 per hour.
- Paralegals, case assistants, legal technology managers, and other non-attorney legal support professionals have received between $125 and $340 per hour.

*See* Dkt. No. 140-3 ¶¶ 18-27. Plaintiff also submits a declaration from Mr. McManis that lists the fees that courts have awarded the McManis Faulkner firm over the past several years. Dkt. No.

---

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3 (citing *Johnson*, 488 F.2d at 717-19).

141. Finally, plaintiff submits declarations from two Bay Area attorneys who assert that, in their opinions, these rates are reasonable. Dkt. No. 140-1, 140-2.

Defendants argue that given the relative simplicity of this case, these rates are excessive. *See* Dkt. No. 150 at 6. Defendants note that the case involved one plaintiff with one claim, the case was not document-intensive, the legal theories were not intricate, and the entire underlying event was captured on audio and video. Defendants summarize that "this is not the kind of claim for which any lawyer in Northern California would charge $1,140 an hour to litigate." *Id.* In support of their arguments, defendants submit a declaration from a legal fee auditor, James Schratz.[6] Dkt. No. 152. Defendants argue that Mr. McManis should receive $750 per hour, that plaintiffs' other attorneys should receive $300 per hour, and that paralegals on the case should receive $150 per hour.

The court agrees that the rates charged by plaintiff's counsel are excessive in this case. Even in the several cases plaintiff has cited, plaintiff has not been able to point to *any* case in which counsel has been awarded the $1,140 per hour McManis seeks. The court also notes that to defend plaintiff Chang's criminal case, McManis charged $900 per hour. In other cases plaintiff has cited, McManis himself has been awarded fees ranging from $750 to $900 an hour. *See* Dkt. No. 141 ¶¶ 44-49. The court finds that given the relative simplicity of this case, it is appropriate to award a base rate of $750 per hour for hours reasonably spent by McManis, $360 per hour for Atkinson, $330 per hour for Murakami, $300 per hour for Weddell, and $150 per hour for Bailey and Carvajal. Based on the number of hours each timekeeper purportedly worked on this case,[7] reducing the attorneys' hourly rates reduces the total attorney fee award from $942,487.75 to

---

[6] In addition to her reply brief, plaintiff filed 18 pages of objections to the Schratz declaration. Dkt. No. 153. "Any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum." Civ. L.R. 7-3(c). Accordingly, the court has only considered objections to Mr. Schratz's analysis contained in plaintiff's reply brief. The court need not rule on plaintiff's objections that Schratz has not been qualified as an expert and that he lacks personal knowledge because the court does not rely on Schratz's opinions. The court relies on Schratz's declaration only to point out specific issues in plaintiff's counsel's time entries.
[7] The hours were calculated from counsel's timesheets. *See* Dkt. No. 141-2, 141-3, 141-4, and 156-1.

5:15-cv-02502-RMW
ORDER REGARDING MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND ATTORNEYS' FEES
RS

$668,875.50.

| Timekeeper | Hours | Requested Rate | Requested Bill | Adjusted Rate | Adjusted Bill |
|---|---|---|---|---|---|
| JM | 317.1 | $1,140 | $361,494.00 | $750 | $237,825.00 |
| TA | 449.1 | $450 | $202,095.00 | $360 | $161,676.00 |
| HW | 576.3 | $375 | $216,112.50 | $300 | $172,890.00 |
| JHM[8] | 149.2 | $425 | $63,388.75 | $330 | $49,219.50 |
| MLB | 254.9 | $325 | $82,842.50 | $150 | $38,235.00 |
| MBC | 60.2 | $275 | $16,555.00 | $150 | $9,030.00 |
| | 1,806.8 | | $942,487.75 | | $668,875.50 |

### 3. Reasonable Number of Hours Expended

Defendants object to several of the time entries by plaintiff's counsel and argue that they are excessive.

### a. Drafting Complaint

Defendants first argue that it should not have taken experienced counsel 24.5 hours to draft an 8-page complaint with a single plaintiff and a single cause of action, especially given that McManis Faulkner had already spent dozens of hours working on Chang's criminal case. This court agrees and will allow plaintiff to charge 8 hours at the billing rate of an attorney with 8 years of experience, $360 per hour.

Adjusting the permissible hourly rates for time spent on the complaint as outlined above, without adjusting the 24.5 hours spent, reduces the billable amount from $13,431.00 to $10,113.00. Allowing 8 hours of work at $360.00 per hour further reduces the billable amount to $2,880.00, a difference of **$7,233.00** from the adjusted amount. *See* Dkt. No. 152 ¶¶ 62-63.

### b. Staffing at Depositions

Plaintiffs billed a total of $128,426.50 for 264.2 hours of work on depositions in this case.

---

[8] The number of hours reported here for Ms. Murakami reflects a 25% reduction in the number of hours she spent working on the instant fee motion between July 28, 2016 and August 30, 2016 (*i.e.*, 92.6 hours instead of 123.4) to account for the fact that her firm discounted its bill for this time by 25%. *See* Dkt. No. 141-3. The calculation above does not adjust the additional 56.6 hours that she worked. *See* Dkt. No. 156-1.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Dkt. No. 141-5. Defendants raise numerous objections to plaintiff's billing records. Dkt. No. 150

2   at 9-11. Defendants contend that plaintiff's attorneys spent excessive time preparing for

3   depositions. Defendants also contend that multiple attorneys attended depositions when one would

4   suffice. Defendants also argue that plaintiff should not be compensated for work done by a trial

5   consultant to prepare plaintiff for her deposition at a rate of $480.00 per hour, a topic addressed

6   below. Defendants assert that in total, plaintiff's actual deposition lasted only 3 hours, and the

7   remaining depositions lasted 23.3 hours—a total of 26.3 hours. *See* Dkt. No. 150 at 10-11.

8   Plaintiff does not dispute this time estimate. Dkt. No. 154 at 10-11. Dividing plaintiff's deposition

9   bill, $128,426.50, by the number of deposition hours, 26.3, yields an average of $4,883.14 spent

10  per deposition hour in deposition preparation or attendance or in other deposition-related

11  activities. This amount is excessive.

12      Defendants request that the court disallow $15,150.00 in preparation time for plaintiff's

13  deposition and $44,190.00 in preparation time for other depositions. The court finds defendants'

14  request reasonable and will accordingly reduce plaintiff's fee award by **$59,340.00**.

15                          **c.      Settlement Conference**

16      Plaintiff's counsel worked 49.9 hours and billed $29,368.50 for settlement and non-

17  binding alternative dispute resolution activities. Dkt. No. 141-5. Of this time, defendants associate

18  42.9 hours and $24,283.50 with the January 28, 2016 mandatory settlement conference. *See* Dkt.

19  No. 152-13. Applying the court's permissible hourly billing rates that were discussed above, the

20  adjusted value of these 42.9 hours would be $17,823.00. Defendants argue that plaintiff sent an

21  excessive number of attorneys (three) to the settlement conference, which lasted one-half day, and

22  that plaintiff's attorneys spent an excessive number of hours preparing their six-page settlement

23  conference statement. While defendants' brief on this topic is somewhat confusing, defendants

24  appear to argue that it would have been reasonable for an associate attorney to spend 12 hours at

25  $300 per hour on the settlement conference statement and for Mr. McManis to meet with his client

26  for three hours and attend the settlement conference for six hours without assistance. The court

27  finds these estimates reasonable and will thus allow $10,350.00 in fees, a reduction of **$7,473.00**

28

17

1

from the adjusted amount.

2

### d.   Pretrial conference

3

Defendants argue that plaintiff's attorneys billed a total of 26.4 hours and $17,954.00 for

4

three attorneys to prepare for and attend the pretrial conference in this matter. *See* Dkt. No.

5

152-14. Applying the court's permissible hourly billing rates that were discussed above, the

6

adjusted value of these 26.4 hours would be $12,342.00. Defendants contend that having two

7

attorneys spend two hours apiece preparing for and attending the conference, which lasted under

8

two hours, would have been sufficient. Dkt. No. 150 at 12. The court agrees with defendants'

9

approach. The court will allow four hours for preparation and attendance for lead counsel at

10

$750.00 per hour and four hours for preparation and attendance by one other attorney at $360.00

11

per hour. This is a total of $4,400.00, and thus a reduction of **$7,902.00** from the adjusted amount.

12

### e.   Trial

13

Defendants contend that plaintiffs billed a total of $193,645.00 for trial preparation and

14

$89,286.00 for trial attendance in this case. Dkt. No. 152 ¶¶ 67-71; *see also* Dkt. No. 141-5

15

(plaintiff's figures listing $315,548.50 for "Other Trial Preparation and Support" and $94,804.50

16

for "Trial and Hearing Attendance"). Defendants argue that because the trial in this matter was

17

quite simple—for example, there were only two witnesses—it was not necessary for plaintiffs to

18

bring three attorneys and two paralegals to trial. Defendants argue that it is appropriate to strike

19

104 hours of Mr. Atkinson's time from plaintiff's fee request because, according to defendants,

20

Mr. Atkinson played a relatively minor role at trial. Plaintiff responds that Mr. Atkinson was

21

working behind the scenes on a number of essential tasks, including, for example, preparing

22

outlines and responding to motions.

23

The court understands that many attorneys may play roles at trial that do not garner

24

attention but are nevertheless essential to a client's success. At the same time, the amount in fees

25

that plaintiff's counsel seeks for a trial with only two days of testimony is excessive. Accordingly,

26

the court reduces the fee award by **$37,440.00**, calculated as 104 hours at $360.00 per hour.

27

### f.   Waiting for Verdict

28

18

United States District Court
Northern District of California

Defendants contend that plaintiffs billed 67.7 hours and charged $38,322.50 in fees merely waiting for the jury to return its verdict. Dkt. No. 150 at 13; *see* Dkt. No. 152-11. Applying the court's permissible hourly billing rates that were discussed above, the adjusted value of these 67.7 hours would be $27,030.00. Plaintiffs respond that the time spent at the courthouse between July 25, 2016 and July 27, 2016 actually involved substantive work such as hearing the jury instructions, answering juror questions, providing further argument on damages, attending the reading of the verdict, and interviewing jurors. A review of the time entries in dispute, Dkt. No. 152-11, shows that both sides' arguments have some merit.

While it was certainly necessary for one attorney to make closing arguments and be present for jury instructions and questions, plaintiffs do not explain why it was reasonable for three attorneys and a paralegal to spend hours at the courthouse between July 25, 2016 and July 27, 2016. Accordingly, the court reduces the fees awarded for these time entries by two-thirds, or **$18,020.00** in adjusted fees.

### g.      Trial Technology Work

Defendant contends that it was not necessary for plaintiff to take two paralegals to trial and that the billing entries of paralegal Carvajal should be stricken. Given the relative simplicity of the issues in this case, the court agrees that the $16,555.00 billed by counsel for trial technology work, (even if adjusted to $9,030.00 based on billing rate) is unnecessary. Accordingly, the court reduces the fee award by **$9,030.00**.

### h.      Internal Conferences Among Attorneys

Defendants next contend that $164,885.50 (or 19% of the total fees plaintiff's counsel has requested) comes from intra-office conferences among attorneys. Dkt. No. 150 at 14-15; *see* Dkt. No. 152-7. Defendants acknowledge that some amount of conferencing about status and strategy may be appropriate but argue that the billed amount represents unnecessary duplication of work. The court agrees and thus reduces plaintiff's fee award by 15% of the adjusted fee amount, or **$104,467.68**.

### i.      Overstaffing

5:15-cv-02502-RMW
ORDER REGARDING MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND ATTORNEYS' FEES
RS

United States District Court
Northern District of California

1    Defendants next contend that plaintiff's case team was generally overstaffed, as evidenced

2  by the fact that plaintiff's attorneys billed for 1537.7 hours of work, Dkt. No. 141-5, while

3  defendants assert that they spent approximately 1,000 hours on the case, Dkt. No. 150 at 15.

4  Because it is difficult to compare the factors that may have gone into how plaintiff's counsel and

5  defense counsel chose to approach this case, the court declines in this instance to rely on the

6  comparison of hours spent as a means of evaluating fees.

7                        **j.      Trial Consultant and Research Costs**

8    Plaintiff seeks $24,720.00 for fees paid to trial consultant Dr. Florence Keller who

9  purportedly helped plaintiff to prepare for her deposition and trial testimony. Dkt. No. 140 at 21;

10  Dkt. No. 141-1. Defendants are correct that plaintiff provides no authority for the specific

11  proposition that a consultant's fees are compensable under Section 1988(b). However, Section

12  1988(b) allows for recovery of out-of-pocket expenses that would normally be charged to a fee-

13  paying client. *See, e.g., Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005). It is not unreasonable

14  for a law firm to hire a trial consultant to assist with the preparation of testimony and charge the

15  consultant's fees to a client. In this case, however, given the relative simplicity of plaintiff's case,

16  the trial consultant's fee seems excessive. Accordingly, the court will allow $15,000.00 of the trial

17  consultant's fee to be compensated, a reduction of **$9,720.00**.

18    Plaintiff also seeks compensation for electronic legal research costs. Defendants concede

19  that such costs may compensable but argue that plaintiff's billing records are insufficiently

20  detailed. The court finds plaintiff's records sufficient in this instance, Dkt. No. 141-6, and the

21  court will allow plaintiff to recover $2,760.26 in research costs. The court will also allow plaintiff

22  to recover messenger and delivery costs.

23                            **4.      Fees to Obtain Fees**

24    Plaintiff's attorneys seek $39,333.75 for 123.4 hours of work spent in preparing the instant

25  fee motion between July 28, 2016 and August 30, 2016. Dkt. No. 141-1. Furthermore, plaintiff's

26  attorneys seek $55,461.00 in additional fees spent in finalizing their fee motion and responding to

27  defendants' arguments. Dkt. No. 156-1. The court finds this request grossly excessive. As

28

20

United States District Court
Northern District of California

defendant points out, 123 hours represents three more than weeks of full-time work for an attorney. For reference, Federal Rule of Civil Procedure 54(d)(2) normally requires a fee motion to be filed within 14 days of a judgment, and Civil Local Rule 7-3(c) requires a reply brief to be filed within 7 days after an opposition is received. Preparing a fee motion in a particularly complex case might require hundreds of attorney hours, but this case is not complex. The court will allow plaintiff to recover for 40 hours at attorney Murakami's adjusted billing rate of $330, or $13,200. The remaining $81,594.75 plaintiffs have requested will not be allowed.

### 5.    Other Factors Affecting Fee Award

Defendants raise several other arguments that they assert should affect the fee award. Defendants point out that while McManis Faulkner asserted that it was unable to take on other cases while pursuing the instant matter, the firm did not quantify the extent to which it purportedly lost work.

The court also considers the amount of fees requested by plaintiff's attorneys in relation to the level of success she achieved. Plaintiff recovered $40,000 in this action, which was $3,000 more than the $37,000 she testified that she owed to her attorneys at McManis Faulkner for defense of the criminal charges against her. In an attempt to argue that she obtained "excellent results," plaintiff points out that she obtained more in damages than the $37,650.06 in economic losses for which she presented evidence at trial. Dkt. No. 154 at 13. The suggestion that plaintiff only hoped to obtain damages sufficient to cover her economic losses is belied by her attorneys' litigation strategy. The record suggests that plaintiff's attorneys hoped to find that that there was a widespread problem of excessive use of force at the Santa Clara County Sheriff's Department, and they apparently pursued extensive discovery in support of that objective.[9] However, the evidence plaintiff's attorneys presented simply did not support that conclusion. Instead, the jury was presented with a trial that featured only two witnesses and a video of almost all of the pertinent

---

[9] For example, defendants point out that plaintiff deposed Sgt. Paula McAllister, Capt. Frank Zacharisen, and Lt. Jose Cordoza regarding the County's law enforcement training, policies, practices, and discipline. Dkt. No. 160 at 3.

5:15-cv-02502-RMW
ORDER REGARDING MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND ATTORNEYS' FEES
RS

events. Moreover, as indicated in this court's JMOL ruling, while plaintiff obtained a judgment against the two deputies, plaintiff did not prevail against the County of Santa Clara. This was not a case in which plaintiff's lawsuit ended a widespread practice of illegal conduct, and thus the public benefit of the suit was limited. In sum, the court finds that plaintiff did not achieve the level of success that she sought in this lawsuit.

Plaintiff argues that "the Supreme Court has expressly rejected any rule of proportionality between damages and fees awards under 42 U.S.C. § 1988," Dkt. No. 161 at 4, but that is an incomplete statement of the law. Rather, in the plurality opinion on which plaintiff relies, Justice Brennan explained:

> The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees. We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.

*City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (citation omitted). *See also McCown*, 565 F.3d at 1104 ("Although the Supreme Court has disavowed a test of strict proportionality, it also suggested that a comparison of damages awarded to damages sought is required."). In *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 810 (9th Cir. 1994), the Ninth Circuit held that a district court "abused its discretion by expressly refusing to relate the extent of success to the amount of the fee award" and noted that "no reasonable person would pay lawyers $148,000 to win $34,000." In the instant case, no reasonable person would pay attorneys nearly a million dollars to obtain $40,000. The court is mindful of the need to provide funding for meritorious civil rights litigation, but an award of nearly a million dollars in fees in this case would simply be a windfall to plaintiff's attorneys.

After making the specific adjustments described earlier in this order, plaintiff would be left with a fee award of $435,825.54 as calculated below:

//

//

5:15-cv-02502-RMW
ORDER REGARDING MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND ATTORNEYS' FEES
RS

| Amount Originally Requested | $970,063.47 |
|---|---|
| | |
| Hourly Rate Adjustment | -$273,612.25 |
| Complaint | -$7,233.00 |
| Deposition Preparation and Attendance - Chang | -$15,150.00 |
| Deposition Preparation and Attendance - Others | -$44,190.00 |
| Settlement Conference | -$7,473.00 |
| Pretrial Conference | -$7,902.00 |
| Trial | -$37,440.00 |
| Waiting for Verdict | -$18,020.00 |
| Trial Technology Work | -$9,030.00 |
| Internal Conferences | -$104,467.68 |
| Trial Consultant Fees | -$9,720.00 |
| **Total Adjustments** | **-$534,237.93** |
| | |
| **Total Permissible After Adjustments** | **$435,825.54** |

This is more than ten times the amount plaintiff recovered at trial.

Considering the modest degree of success achieved, the lack of complexity of the case, and the fact that plaintiff's attorneys have not quantified the extent to which they were unable to pursue other work, the court finds that an attorney fee award of **$350,000.00** is appropriate. The court finds that this amount strikes an appropriate balance between promoting meritorious civil rights litigation and discouraging inefficiency. This amount is also consistent with the level of fees awarded in two of the cases on which plaintiff relies in support of her fee motion, both of which were legally more complex than the case at bar. *See Dixon v. City of Oakland*, No. C-12-05207 DMR, 2014 WL 6951260, at *1 (N.D. Cal. Dec. 8, 2014) (awarding $316,572.10 in fees in case involving claims of negligence, assault and battery, and false arrest and imprisonment); *Rosenfeld v. U.S. Department of Justice*, 904 F. Supp. 2d 988, 992 (N.D. Cal. 2012) (awarding $363,217.60 in fees and costs in Freedom of Information Act case involving multiple years of litigation, including three rounds of cross-motions for summary judgment).

### III.    ORDER

For the foregoing reasons, defendants' motion for JMOL is GRANTED as to defendant

23

County of Santa Clara and DENIED as to defendant Strickland. Plaintiff's motion for attorneys' fees is GRANTED as to defendants Forest and Strickland in the amount of **$350,000.00**.

**IT IS SO ORDERED.**

Dated: October 24, 2016

_____
Ronald M. Whyte
United States District Judge

5:15-cv-02502-RMW
ORDER REGARDING MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND ATTORNEYS' FEES
RS